496 P.2d 1106

**Kenneth D. GOUGH, Plaintiff-Appellant,**

v.

**FAMARISS OIL AND REFINING COMPANY, Employer, and Aetna Casualty and Surety Company, Insurer, Defendants-Appellees.**

No. 753.

Court of Appeals of New Mexico.

March 17, 1972.

Certiorari Denied May 2, 1972.

Gary D. Reagan, Williams, Johnson, Houston, Reagan & Porter, Hobbs, for plaintiff-appellant.

Lowell Stout, Hobbs, for defendants-appellees.

## OPINION

SUTIN, Judge.

This is an appeal by Gough from an adverse judgment in a workmen's compensation case.

We affirm.

The trial court found that Gough, a resident of Lea County, was employed by Famariss Oil as a truck driver; that on January 31, 1970, Gough was assigned to a Famariss truck loaded with 9,000 gallons of gasoline to be delivered to Lordsburg, New Mexico. He had not been feeling well for several days and was taking medicine prescribed by his doctor. By prior arrangement, Gough drove to Arkansas Junction in Lea County where he picked up his brother, Ronnie, and Ray Blair.

On many occasions prior to the time in question, Gough had been instructed by his superiors not to carry passengers in his truck, and that he had no right under any circumstances to permit any unauthorized person to drive the truck, and Gough violated both of these instructions. Gough drove the truck from Arkansas Junction to Artesia, stopped and made inquiries about the weather. His instructions were to go by Cloudcroft on the road to Deming if the weather was good and his jake brake was working. Otherwise to go by Roswell through Ruidoso. After he bumped his tires, the three men went into a liquor store. Blair bought a six-pack of beer and a pint of whiskey. Blair and Ronnie had one beer at the bar.

After leaving Artesia, Gough drove to Mayhill and stopped at a bar and service station where he had one beer, and Blair and Ronnie had two bottles of beer. Blair got rowdy and obnoxious to the waitress and was accused of trying to take some sunglasses. The waitress refused to serve them any more drinks; however, she sold a six-pack of beer to Blair who consumed one on the way. Ronnie had one beer between Mayhill and Cloudcroft. After leaving Mayhill, Gough drove the truck and became groggy. The road was wet and slick, and it was snowing hard. Gough turned the truck over to his brother, Ronnie to drive.

They stopped at a restaurant in Cloudcroft where Ronnie parked the truck improperly and was asked to move it so as not to block the driveway. Gough was feeling bad and groggy, and had three cups of coffee. Ronnie continued to drive when they left Cloudcroft. The large truck with the heavy load of gasoline started down the steep incline between Cloudcroft and Alamogordo. It had numerous hairpin curves. On two occasions, the motor died. Gough attempted to help his brother drive by trying to get the transmission out of gear. He claimed the jake brake was not working and failed, and that the brake on one wheel of the trailer was defective. The truck gained speed and at a point 1.9 miles west of Cloudcroft, it went off the highway, plunged into a canyon and burned up.

The trial court further found that the accident and resulting injuries to Gough were directly and proximately caused by his willful conduct and a deviation from the course of his employment in three respects:

(a) In allowing an unauthorized person to drive the truck in deliberate defiance of instructions given to Plaintiff by his employer.

(b) In permitting a person to take over the operation of the truck whom he knew had engaged in drinking intoxicating beverages.

(c) In permitting another person to drive the truck who had no experience in driving this particular vehicle, making it necessary for the Plaintiff to try to explain how to operate the vehicle which was carrying highly inflammable materials down a mountainous road under very hazardous weather conditions.

The trial court further found that the accident occurred as a result of the improper operation of the truck by Ronnie; that neither prior to or after the accident, did any one complain to Famariss or any of its employees, or to the police officer investigating the accident that there were any defects of any kind in the brakes or the truck; that at the time of the accident there were no defects at all in the truck, trailer, accessory equipment, including the jake brake; that there was no emergency of any kind which warranted or in any way would have authorized Gough to turn the operation of the truck over to somebody else; that Gough admitted he could have stayed in Cloudcroft for a while, called his employer and gotten a substitute driver if he was sick; that Gough violated known rules and regulations of the Interstate Commerce Commission and/or his employer against carrying other passengers in the truck or allowing it to be operated by an unauthorized person; that Gough was acting outside the scope of his duty and employment when he permitted Ronnie to drive; that the accident and injuries sustained by Gough did not arise out of and in the course of his employment with Famariss.

Gough contends, (1) some of the trial court's findings are improper and must be disregarded; (2) the trial court's conclusions are erroneous; and (3) judgment should be entered in accordance with Gough's requested findings and conclusions.

### 1. *The Trial Court's Findings Need not be Disregarded.*

Gough contends that some of the trial court's "findings of fact" were con-

clusions of law and not findings of ultimate facts, and the judgment based thereon cannot stand. This contention is not correct because occasional intermixture of matters of fact and conclusions of law do not constitute error where we can see enough, upon a fair construction, to justify the judgment of the court. Hoskins v. Albuquerque Bus Company, 72 N.M. 217, 382 P.2d 700 (1963). Findings of fact are to be liberally construed so as to support the judgment. Plains White Truck Company v. Steele, 75 N.M. 1, 399 P.2d 642 (1965). We must remember that our primary function "is to correct an erroneous result, not to correct errors which could not change the result." Brundage v. K. L. House Construction Company, 74 N.M. 613, 396 P.2d 731 (1964). We can easily separate the alleged conclusions of law from the findings of fact. By placing the alleged conclusions of law in their proper category, we note that the findings of fact support the conclusions of law.

Gough next contends that the findings of fact contain erroneous conclusions of law, and that certain findings are not supported by substantial evidence. We have carefully reviewed the record and conclude that no such error exists.

The trial court's ultimate findings of fact necessary to support the conclusions hereinafter discussed are supported by substantial evidence.

### 2. *The Trial Court's Conclusions are not Erroneous.*

Gough first contends that the injury was caused in whole or in part by the want of ordinary care of Gough, not willful want of care, § 59–10–5(C), N.M.S.A.1953'(Repl. Vol. 9, pt. 1, Supp.1971); that such conduct, therefore, is not a defense, and the conclusion that Gough's conduct was willful is erroneous.

Section 59–10–5(C), supra, reads as follows:

Defenses to action by employee.—In an action to recover damages for a personal injury sustained by an employee while

engaged in the line of his duty as such, or for death resulting from personal injuries so sustained in which recovery is sought upon the ground of want of ordinary care of the employer, or of the officer, agent or servant of the employer, it shall not be a defense:

\* \* \* \* \* \*

C. that the injury or death was caused, in whole or in part by the want of ordinary care of the injured employee where such want of care was not willful.

This statutory provision has not been heretofore interpreted by our courts of review. In Walker v. Woldridge, 58 N.M. 183, 268 P.2d 579 (1954), the court said:

> For an injury to be compensable, it must "arise out of" and in the course of employment and not wilfully suffered or intentionally inflicted.

■ "Want of ordinary care" means negligent conduct on the part of Gough. See N.M.U.J.I. 12.1 and 12.2; Employers Casualty Company v. Moyston, 80 N.M. 796, 461 P.2d 929 (Ct.App.1969). "Willful" means "the intentioned doing of a harmful act without just cause or excuse or an intentional act done in utter disregard for the consequences." Potomac Insurance Company v. Torres, 75 N.M. 129, 401 P.2d 308 (1965). We believe the legislature intended § 59–10–5(C), supra, to mean that negligent conduct of an employee which causes an injury is not a defense to a claim for workmen's compensation, but willful misconduct is a defense.

■ The trial court found that Gough, in the absence of an emergency, (1) intentionally violated the instructions of Famariss not to permit anyone else to drive, or to take on passengers, especially those with beer or liquor; (2) intentionally permitted Ronnie to drive knowing he had engaged in drinking intoxicating beverages; (3) intentionally permitted Ronnie to drive a truck carrying 9,000 gallons of gasoline down a mountain road with numerous hair pin curves under very hazardous weather conditions without experience in driving this particular truck. All of these acts were harmful, intentional, without just cause or excuse, or they were done in utter disregard of the consequences. We believe the facts found by the court, with reasonable inferences to be drawn therefrom, are sufficient to come within the definition of willful misconduct on the part of Gough which caused his injuries. The trial court's finding or conclusion of willful misconduct was supported by substantial evidence and was not erroneous.

■ Gough next contends that his conduct did not take him outside the Workmen's Compensation Act and the trial court erred in concluding that his injuries did not arise out and in the course of his employment. "Arise out of" relates to cause of injury, and "course of employment" refers to the time, place and circumstances under which the injury occurred. Both must co-exist. But, as heretofore pointed out, willful misconduct is a defense which puts Gough outside a workmen's compensation claim. Walker v. Woldridge, supra. Walker was followed in Witt v. Marcum Drilling Company, 73 N.M. 466, 389 P.2d 403 (1964), in which the court said:

> Violation of specific instructions which limit the scope or sphere of work which an employee is authorized to do bars recovery of workmen's compensation for an injury so sustained.

Gough relies on Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438 (1964), where Frederick did not take the shortest route in violation of his employer's instructions. But the court, in its opinion, said, " \* \* \* there is not one word in the proof to establish this as a deviation." The specific instruction did not "limit the scope or sphere of work" which Frederick was authorized to do. The contrary appears in the instant case.

Gough's citations from other states and texts are not in accordance with New Mexico statutes and judicial opinions.

Affirmed.

It is so ordered.

WOOD, C. J., and COWAN, J., concur.